GROVELL v. STOCKARD S. S. CO.

No. 201 of 1947, Admiralty.

District Court, E. D. Pennsylvania.
July 16, 1948.

932

Mace H. Scovell, of Freedman, Landy and Lorry, all of Philadelphia, Pa., for libellant.

Robert Cox, of Krusen, Evans & Shaw, all of Philadelphia, Pa., for respondent.

BARD, District Judge.

This is a libel instituted by a merchant seaman to recover damages and maintenance and cure.

The libel alleges that the libellant was injured while on authorized shore leave in a foreign port, and that the respondent failed to care properly for the libellant subsequent to the injury, with the result that the injury was thereby aggravated.

On the basis of the pleadings and the testimony, I make the following special

Findings of Fact.

1. The libellant is James Elliott Grovell.

2. The respondent is the Stockard Steamship Company, which at all material times operated and controlled the Steamship "Florence Martus".

3. Libellant, at all times material herein, was employed by the respondent as a wiper in the engine room of the "Florence Martus" at a wage of $175 per month plus found.

4. On January 11, 1947 the "Florence Martus" was moored at a dock at Catania, Sicily, discharging cargo.

5. On Jan. 11, 1947, at 4 o'clock p. m., libellant went ashore on authorized shore leave.

6. At approximately 7 p. m. on January 11, 1947, libellant, in company with two fellow crew members and two girls, left a bar-room, in the town of Catania, and were proceeding to a local dance hall, when they were accosted by a native hack driver who solicited their business.

7. After an exchange of angry words between libellant and the hack driver, the hack driver flicked his whip at libellant, striking libellant on the right eye.

8. At the time he sustained his injury libellant was intoxicated; however, it has not been established that the libellant's intoxicated condition was the cause of his sustaining the injury.

9. Libellant received first-aid treatment at a local drug store, and also at the local Red Cross Station.

10. Libellant returned to the "Florence Martus" at 3 a. m. on the morning of January 12, 1947, and reported his injury to the purser.

11. The purser cleansed and applied yellow oxide of mercury to libellant's right eye, and excused him from duty.

12. At 4:45 p. m. on January 12, 1947, Dr. Ettore Dominedo, a local physician, came aboard the "Florence Martus", and examined the libellant and prescribed treatment for his eye injury.

13. On January 13, 1947, at 3 o'clock p. m., Giovanni Sardo, an eye specialist, was brought aboard the "Florence Martus" to examine libellant. Dr. Sardo approved the treatment prescribed and recommended that libellant be treated further by Dr. Dominedo.

14. On January 14, 1947, at 3 o'clock p. m., and on January 15, 1947 at 2 o'clock p. m., libellant was taken ashore by the purser to the offices of Dr. Dominedo for further treatment.

15. On January 16, 1947, the "Florence Martus" departed from Catania, Sicily.

16. Libellant was ordered to return to duty approximately two weeks after he sustained the injury to his eye.

17. The "Florence Martus" arrived at the Port of Philadelphia, Pennsylvania, on February 14, 1947.

18. From January 12, 1947 until February 16, 1947 libellant was treated approximately 100 times by the purser. The treatments consisted of applications of yellow oxide of mercury to the libellant's injured eye.

19. On February 17, 1947, libellant was paid off by the respondent, and received a master's certificate from the captain of the "Florence Martus", and was admitted as an ambulatory out-patient in the United States Public Health Station of Philadelphia.

20. On February 17, 1947, February 24, March 10, and March 24, libellant was examined and his injury prescribed for by Dr. Sidney L. Olsho, a specialist connected with the United States Public Health Service.

21. Libellant's injury was diagnosed by the United States Public Health Service as lacerations of the iris, right eye. The United States Public Health Service found that there would be residual damage to libellant's right eye, and that the amount of vision he would eventually have in that eye was problematical.

22. On April 14, 1947, pursuant to his own request, libellant was discharged from further treatment by the United States Public Health Service.

23. On April 16, 1947 libellant returned to work.

24. As of April 9, 1947, libellant was suffering from a 40% loss of vision in his right eye. This loss of vision is permanent.

25. At the time he sustained the injury to his eye, libellant was in the service of the vessel, and his injury was not the result of misconduct on his own part.

26. After receiving notice of libellant's injury, libellant's superior officers on board the "Florence Martus" did everything that reasonable persons would do under the circumstances in furnishing libellant with professional medical treatment.

27. The fact that libellant returned to work approximately two weeks after his injury aggravated that injury; however, there is no competent testimony to establish the degree by which his injury was so aggravated.

28. Libellant was unable to return to work for a period of 56 days following the termination of his employment with respondent.

## Conclusions of Law.

1. This Court has jurisdiction of the subject matter and the parties to this action.

 2. Libellant is entitled to maintenance and cure for a period of 56 days at $3.50 per day, a total of $196.

3. Libellant has not borne the burden of proving that his present condition is to any ascertainable degree the result of negligence or improper care on the part of respondent.

4. The cause of action for damages is dismissed.

5. A decree may be submitted in accordance with this opinion.